IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HERBERT GARFIELD GARDNER, | § | |
| TDCJ #1948640, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-2185 |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

# MEMORANDUM AND ORDER

State inmate Herbert Garfield Gardner (TDCJ #1948640), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 [Doc. # 1] that includes a supporting memorandum [Doc. # 1-1], seeking relief from a 2014 conviction for capital murder that resulted in a sentence of life without parole. The respondent has answered with a motion for summary judgment, arguing that this action must be dismissed because the petition is barred by the governing one-year statute of limitations [Doc. # 8]. Gardner has filed a response [Doc. # 15], a "Motion to Dismiss" the respondent's arguments [Doc. # 14], and a motion for a certificate of appealability [Doc. # 18]. After considering all of the pleadings, the state court records, and the applicable law, the Court will grant the respondent's motion and dismiss the petition for the reasons explained below.

I.  **BACKGROUND**

On March 1, 2013, a local grand jury returned an indictment against Gardner in Harris County Cause No. 1372136, charging him with capital murder for intentionally causing the death of his girlfriend, Connie Bowie, by shooting her with a deadly weapon, namely a firearm, while burglarizing a building owned by her [Doc. # 9-16, at 20].[1] On August 15, 2014, a jury in the 180th District Court for Harris County found Gardner guilty of capital murder as charged in the indictment [Doc. # 9-16, at 372]. Because the State was not seeking the death penalty, the trial court automatically imposed a sentence of life without parole [Doc. # 9-16, at 372-73].

On direct appeal, Gardner argued that the evidence was insufficient to support his conviction for capital murder because the State did not prove that he killed Bowie while in the course of committing the predicate felony offense of burglary [Doc. # 9-7, at 15]. An intermediate state court of appeals rejected that argument, finding that the evidence was more than sufficient, and affirmed the conviction. *See Gardner v. State*, 478 S.W.3d 142 (Tex. App. — Houston [14th Dist.] 2015, pet. ref'd). In doing so, the court of appeals summarized the evidence at trial as follows:

---

[1] For purposes of identification, all page numbers reference the pagination for each docket entry imprinted by the Court's electronic filing system, CM/ECF.

On December 23, 2012, [Gardner] shot and murdered complainant Connie Bowie inside her home in Houston, Texas. It was undisputed at trial that Bowie owned and lived in the home at the time of the murder and that previous to the murder, [Gardner] was in a romantic relationship with Bowie and had lived with her at the property for around four years.

Officer J.W. James of the Houston Police Department testified that on November 2, 2012, he responded to a disturbance call at the home to find [Gardner] and Bowie arguing in the street. James reported that Bowie appeared fearful and had asked [Gardner] to leave. [Gardner] was then arrested for public intoxication. Records obtained from the Sun Suites Hotel and admitted into evidence revealed that [Gardner] began renting a room at the hotel on the same day as the disturbance, November 2, 2012, and continued to rent a room there until December 23, 2012, the day before the murder.[2]

Terrell Lewis testified that he was a friend of [Gardner's] prior to the murder and went out drinking and taking drugs with [Gardner] on the evening of December 22, 2012, until the early morning hours of December 23. According to Lewis, [Gardner] had several suitcases and bags in his car at the time and explained that he had "been staying in a room." When Lewis and [Gardner] left a club for [Gardner] to drive Lewis home, [Gardner] instead drove to Bowie's home and backed his car into the driveway.[3] [Gardner] exited but left the vehicle running. He then approached the home and began banging on the front door. At that point, Lewis could hear [Gardner] and Bowie talking through the door. [Gardner] sounded angry. Bowie told him "[j]ust come back, come back," "[c]ome back. I'm sleeping," and "[c]ome back in the morning, we'll talk." Lewis then heard a window break, and when he turned to look at the house again, he could no longer see [Gardner]. Lewis called to [Gardner] "[w]hat . . . you doing?" and moved to the driver's side of the car. When [Gardner] did not come out of the house after a few seconds, Lewis drove to the end of the street, called 9–1–1, and reported "domestic violence."

---

[2] The murder occurred in the early morning hours of December 23, 2012.
[3] Lewis identified the house in a photograph that was otherwise established to be of the home.

Officer Anthony Thomas testified that on the morning of December 23, 2012, he was dispatched to the home for an assault in progress. As he approached, he heard a gunshot and his rear window "exploded." Thomas then saw a man standing about ten feet away pointing a shotgun at him.[4] The man fired twice more as Thomas sped away. After reporting that shots had been fired, Thomas returned to the area and saw the man with the shotgun enter a red Dodge Nitro and drive away. Thomas and two other police vehicles gave chase, soon joined by several others. The Nitro eventually crashed into a house, and [Gardner] was identified as the driver and transported by ambulance to the hospital. An officer described [Gardner] at that point as having blood on him "from head to toe." Officer Jarvis Robins rode with [Gardner] in the ambulance and reported that on the ride, [Gardner] said, "I should not have shot her," and "I'm going to hell."

Officer Rodrick Standfield testified that he also responded to the crime scene that morning and discovered Bowie's body lying on the front porch with one foot still inside the window. She appeared to have suffered shotgun wounds to the face and torso. The inside of the home appeared to have been ransacked; broken glass and blood drops were "all over" and there were "pools of blood in every room." Standfield also observed spent shotgun shells.

Sergeant Daniel Nunez, a crime scene unit supervisor, investigated the murder scene and concluded that someone had used "a good amount of force" to break into the home through the front window. Blood patterns near the window were "consistent with someone breaking in, pushing in through the window," cutting an arm, and starting to bleed. Sergeant Richard Rodriquez with the HPD Homicide Division opined based on his experience and training that the window initially was broken by someone coming in through the window and not by Bowie having fallen out through the window. He further explained that it appeared someone had walked through the house "spurting out blood." When [Gardner] was arrested, he had two severe lacerations on his arm, which Rodriquez stated would explain the blood pattern observed at the home. Subsequent DNA testing of blood samples taken at the home produced positive matches to

---

[4] Under the circumstances, Thomas was unable to make a positive identification of the man with the shotgun.

[Gardner's] blood. Rodriquez additionally noted that only two items found in the home appeared to belong to a male—a pair of jeans and a pair of boots—and that a vehicle registration receipt found among [Gardner's] possessions and dated November 6, 2012, showed a different address than Bowie's home for [Gardner].

The jury charge permitted the jury to find [Gardner] not guilty, guilty of murder, or guilty of capital murder. The jury found [Gardner] guilty of capital murder.

*Gardner*, 478 S.W.3d at 144-45 (footnotes re-numbered in original). Thereafter, the Texas Court of Criminal Appeals refused Gardner's petition for discretionary review on January 13, 2016 [Doc. # 9-15, at 1].

In an application dated December 18, 2016, Gardner sought a state writ of habeas corpus to challenge his conviction under Article 11.07 of the Texas Code of Criminal Procedure [Doc. # 10-7, at 6-39].[5] In that application, Gardner raised nine separate claims of ineffective assistance of counsel against his appellate attorney and five additional allegations of ineffective-assistance against his trial attorneys [*Id.* at 11-37]. On January 25, 2018, submitted an "amended" application asserting one additional claim that accused the Harris County District Attorney's Office of corrupt charging practices [Doc. # 10-8, at 52-67]. After Gardner filed a petition for a writ

---

[5] A state habeas corpus application filed by a Texas inmate is considered to have been "filed" at the time the application is delivered to prison authorities for mailing to the court, "not at the time they are stamped by the clerk of the court." *Richards v. Thaler*, 710 F.3d 573, 578 (5th Cir. 2013). The prison mail-box rule also applies to federal habeas petitions. *See Spotville v. Cain*, 149 F.3d 373, 378 (5th Cir. 1998); *see also* Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts. As a result, the Court uses the date that the petitioner's pleadings were executed as the presumptive filing date.

of mandamus to compel a ruling on his application [Doc. # 10-1, at 1-2; Doc. # 10-9, at 51-52], the trial court forwarded the record to the Texas Court of Criminal Appeals without a recommendation [Doc. # 10-7 at 1; Doc. # 10-9, at 54]. On November 14, 2018, the Texas Court of Criminal Appeals dismissed the application after concluding that Gardner's submission failed to comply with page-limits imposed by Rule 73.1 of the Texas Rules of Appellate Procedure, which governs the form, content, and length of applications and supporting memoranda in habeas proceedings under Article 11.07 [Doc. # 10-3, at 1].

On December 18, 2018, Gardner executed another "amended" state habeas corpus application under Article 11.07, which the Harris County District Clerk's Office received on January 16, 2019 [Doc. # 10-19, at 3-27]. In that amended application, Gardner asserted a claim of "actual innocence" along with his eight ineffective-assistance claims against his appellate and trial attorneys [*Id*. at 8-25]. Gardner filed a second petition for a writ of mandamus to compel a ruling on his claims [Doc. # 10-16, at 1-2; Doc. # 10-17, at 1-2]. Noting in its answer that Gardner's original application had been disposed of previously, the State observed that Gardner's amended submission also failed to comply with procedural rules and moved to dismiss [Doc. # 10-19, at 108-11]. The trial court entered findings of fact and conclusions of law, recommending that the amended application be dismissed for failure to comply with procedural rules [Doc. # 10-19, at 114-19]. The Texas

Court of Criminal Appeals did not follow that recommendation and instead summarily denied relief without a written order on May 22, 2019 [Doc. # 10-18, at 1].

In a petition and memorandum dated June 3, 2019, Gardner now seeks federal habeas corpus relief under 28 U.S.C. § 2254 [Doc. # 1, at 1-10; Doc. # 1-1, at 1-23]. Gardner's federal petition lists the following grounds for relief:

1. He is actually innocent of the offense because the prosecution induced perjury and withheld or failed to disclose exculpatory documents regarding a third-party perpetrator and did not meet its burden to prove that a burglary occurred.

2. Appellate counsel was ineffective for failing to raise an issue about whether he was entitled to a jury instruction on the defense of "sudden passion."

3. Appellate counsel was ineffective for failing to raise an issue about the trial court allowing the prosecutor to refer to evidence not in the record over his trial attorney's objection.

4. Appellate counsel was ineffective for failing to raise an issue about prosecutorial misconduct at his trial.[6]

[Doc. # 1, at 6-7; Doc. # 1-1, at 9-22]. The respondent moves for summary judgment, arguing that Gardner's federal petition is barred from review by the governing one-year statute of limitations [Doc. # 8, at 10-16]. Gardner has filed a

---

[6] The petitioner proceeds *pro se* in this case. Courts are required to liberally construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972).

response [Doc. # 16], but he also filed a "Motion to Dismiss" the respondent's motion for summary judgment because it does not address the merits of his claims [Doc. # 15].

## II.  THE ONE-YEAR STATUTE OF LIMITATIONS

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which provides that all federal habeas corpus petitions are subject to a one-year limitations period found in 28 U.S.C. § 2244(d). Because the petitioner challenges a state court judgment of conviction, the statute of limitations for federal habeas corpus review began to run pursuant to 28 U.S.C. § 2244(d)(1)(A) at "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

The record reflects that Gardner did not file a petition for a writ of certiorari to seek review by the United States Supreme Court after the Texas Court of Criminal Appeals refused his petition for discretionary review on January 13, 2016 [Doc. # 9-15, at 1]. Accordingly, his conviction became final when his time to seek certiorari review expired 90 days later on April 12, 2016. *See Roberts v. Cockrell*, 319 F.3d 690, 693-95 (5th Cir. 2003) (holding that a Texas conviction becomes final for limitations purposes when the time for seeking further direct review expires). That date triggered the statute of limitations for federal habeas corpus review, which

expired one year later on April 12, 2017. *See* 28 U.S.C. § 2244(d)(1)(A). As a result, the pending habeas corpus petition, executed by Gardner on June 3, 2019, is late by more than two years and is barred from federal review unless a statutory or equitable exception applies to toll the limitations period.

### A. Statutory Tolling

A habeas petitioner may be entitled to statutory tolling under 28 U.S.C. § 2244(d)(2), which excludes from the AEDPA limitations period a "properly filed application for [s]tate post-conviction or other collateral review." The Supreme Court has clarified that, for purposes of tolling under § 2244(d)(2), "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable law and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). In other words, "a properly filed [state] application [for collateral review] is one submitted according to the state's procedural requirements." *Causey v. Cain*, 450 F.3d 601, 605 (5th Cir. 2006) (quoting *Lookingbill v. Cockrell*, 293 F.3d 256, 260 (5th Cir. 2002)).

The record reflects that Gardner filed a state habeas corpus application on December 18, 2016, which the Texas Court of Criminal Appeals dismissed on November 14, 2018, for failure to comply with Rule 73.1 of the Texas Rules of Appellate Procedure [Doc. # 10-3, at 1]. Compliance with Rule 73.1 is a prerequisite to consideration of the merits of an applicant's claims. *See Ex parte Blacklock*, 191

S.W.3d 718, 719 (Tex. Crim. App. 2006). Under Rule 73.2, the Texas Court of Criminal Appeals is authorized to dismiss any application that does not comply with these rules. *See Ex parte Walton*, 422 S.W.3d 720, 721 (Tex. Crim. App. 2014) (addressing specifically the rule governing page limits on state habeas applications and memoranda). The Fifth Circuit has consistently held that a state habeas corpus application dismissed for failure to comply with Rule 73.1 of the Texas Rules of Appellate Procedure was not "properly filed" and does not toll the AEDPA statute of limitations under § 2244(d)(2). *See North v. Davis*, — F. App'x —, 2020 WL 370034, at *2 (5th Cir. Jan. 22, 2020) (per curiam); *Koumjian v. Thaler*, 484 F. App'x 966, 968 (5th Cir. 2012) (per curiam); *Broussard v. Thaler*, 414 F. App'x 686, 688 (5th Cir. 2011) (per curiam); *Wickware v. Thaler*, 404 F. App'x 856, 857-58 & n. 2 (5th Cir. 2010) (per curiam); *Davis v. Quarterman*, 342 F. App'x 952, 953 (5th Cir. 2009) (per curiam); *Whitlock v. Quarterman*, 2008 WL 3244282 (5th Cir. 2008) (per curiam); *Caldwell v. Dretke*, 182 F. App'x 346, 347 (5th Cir. 2006) (per curiam); *Edwards v. Dretke*, 116 F. App'x 470, 471 (5th Cir. 2004) (per curiam). As a result, Gardner's initial state habeas corpus application does not toll the limitations period.

Gardner executed an amended state habeas application on December 18, 2018, which the Texas Court of Criminal Appeals summarily denied on May 22, 2019 [Doc. # 10-18, at 1]. Because the AEDPA statute of limitations had expired

before this application was filed, tolling is not available for this proceeding under § 2244(d)(2). *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (noting that the statute of limitations is not tolled by a state habeas corpus application filed after the expiration of the limitations period).

The pleadings disclose no other basis for statutory tolling. Gardner does not allege that state action prevented him from filing a federal petition in a timely manner. *See* 28 U.S.C. § 2244(d)(1)(B). Further, none of the claims are based on a newly recognized constitutional right made retroactive by the Supreme Court. *See* 28 U.S.C. § 2244(d)(1)(C). Gardner also does not demonstrate that there was a factual predicate for any of his claims that could not have been discovered previously if the petitioner had acted with due diligence. *See* 28 U.S.C. § 2244(d)(1)(D). Accordingly, statutory tolling does not save Gardner's late-filed federal petition.

### B. Equitable Tolling

The Fifth Circuit has held that the statute of limitation found in the AEDPA may be equitably tolled at the district court's discretion "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). Equitable tolling is an extraordinary remedy which is sparingly applied. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). The Supreme Court has clarified that a habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Gardner contends that he is entitled to equitable tolling because of lengthy delay in processing his initial habeas corpus application in state court, which was ultimately dismissed for failure to comply with procedural rules without giving him timely notice of the deficiency [Doc. # 16, at 2]. The record reflects that there was substantial delay from the time that Gardner executed his initial state habeas corpus application on December 18, 2016, and the date that his application was dismissed for failure to comply with procedural rules by the Texas Court of Criminal Appeals on November 14, 2018. The Fifth Circuit has repeatedly held, however, that delay associated with state habeas proceedings and the failure to timely notify a petitioner that his application was not properly filed is not an extraordinary circumstance that warrants equitable tolling. *See Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004); *see also North v. Davis*, — F. App'x —, 2020 WL 370034, at *4 (5th Cir. 2020) (per curiam); *Jones v. Stephens*, 541 F. App'x 499, 503-05 (5th Cir. 2013) (per curiam). Accordingly, equitable tolling is not available for the time that his initial state habeas corpus application was pending.

The court notes that Gardner raises a claim that he is actually innocent of the charged offense. Actual innocence, if proven, may excuse a failure to comply with the one-year statute of limitations on federal habeas corpus review. *See McQuiggin*

*v. Perkins*, 569 U.S. 383, 401 (2013). An unsupported allegation of actual innocence, however, will not suffice. *See id*. To make a tenable actual-innocence claim in this context, a habeas petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner must then show that "it is more likely than not that," in light of the new evidence, "no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 326-27.

As set forth above, the state court of appeals made detailed findings about the substantial amount of evidence presented at trial. *See Gardner v. State*, 478 S.W.3d 142, 144-45 (Tex. App. — Houston [14th Dist.] 2015, pet. ref'd). The state appellate court's findings of fact are entitled to the presumption of correctness on federal habeas corpus review unless the petitioner presents "clear and convincing" evidence to refute those facts. *See* 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982) (per curiam) (observing that "the presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact"); *Moody v. Quarterman*, 476 F.3d 260, 268 (5th Cir. 2007) (same) (citations omitted). Gardner does not make that showing here. In support of his actual-innocence claim, Gardner encloses four pages of exhibits from the state court record and a short affidavit from his ex-wife, who attempts to explain

13

Gardner's failure to update the address on his vehicle registration in 2012, following their divorce in 2005 [Doc. # 1-2, at 1-5], but none of this information qualifies as "new" or exculpatory. Gardner does not otherwise allege facts, much less present new reliable evidence, showing that he is actually innocent of the charged offense or that the exception outlined in *McQuiggin* applies. Therefore, he does not establish that equitable tolling is available for this reason.

Gardner also notes that he lacks assistance from trained counsel and that he is a *pro se* prison inmate [Doc. # 16, at 2-3]. Although Gardner represents himself, neither a prisoner's status as an indigent inmate without legal training nor his ignorance of the law excuse the failure to file a timely federal habeas petition and are not grounds for equitable tolling. *See Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999); *see also Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2003) (noting that a petitioner's ignorance or mistake is insufficient to warrant equitable tolling); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (finding that "lack of knowledge of the filing deadlines," "lack of representation," "unfamiliarity with the legal process," illiteracy, and "ignorance of legal rights" generally do not justify tolling). Because Gardner has not established any valid statutory or equitable basis for tolling the statute of limitations, the Court will grant the respondent's motion for summary judgment and dismiss the petition as untimely filed.

## III. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its ruling debatable or wrong. Therefore, Gardner's motion for a certificate of appealability will be denied.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

> 1. The respondent's motion for summary judgment [Doc. # 8] is **GRANTED**.

2. The petition for a writ of habeas corpus filed by Herbert Garfield Gardner under 28 U.S.C. § 2254 is **DENIED** and this case is **DISMISSED with prejudice**.

3. Gardner's motion to dismiss [Doc. # 15] is **DENIED**.

4. Gardner's motion for a certificate of appealability [Doc. # 18] is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on ___March 27_____, 2020.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE